IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SHEILA A. DALEY, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-333 |
| § | |
| MARITIME HYDRAULICS US, INC., § | |
| MH PYRAMID, INC., and ENSCO § | |
| OFFSHORE COMPANY, § | |
| § | |
| Defendants. § | |

**ORDER DENYING DEFENDANTS MH PYRAMID, INC. AND MARITIME
HYDRAULICS US, INC.'S AMENDED OPPOSED MOTION TO EXCLUDE THE
TESTIMONY OF FEASTER FITZPATRICK, M.D.**

Plaintiffs bring this claim against Defendants MH Pyramid, Inc., Maritime Hydraulics U.S., Inc. (collectively "MHP"), and Ensco Offshore Company for the alleged wrongful death of Larry C. Daley. MHP filed a Motion to Exclude the Testimony of Feaster Fitzpatrick, M.D. Plaintiffs filed a timely Response. For the reasons articulated below, MHP's Amended Opposed Motion to Exclude the Testimony of Feaster Fitzpatrick, M.D. is **DENIED**.[1]

**I. Background and Analysis**

Larry C. Daley was employed by MHP as a service technician and was killed when he was drawn into a fastline sheave while on duty. Dr. Feaster Fitzpatrick performed an autopsy on Daley on the date of his death. Dr. Fitzpatrick prepared an autopsy report, but he did not perform any x-rays, quantify blood loss, or take any measurements. Plaintiffs have designated Dr. Fitzpatrick as an

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

expert witness, and MHP claims that Dr. Fitzpatrick's testimony should be disallowed as unreliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

Federal Rule of Evidence 702 requires expert testimony to be given by a "qualified" expert, to be "based upon sufficient facts or data," and to be "the product of reliable principles and methods." Fed. R. Evid. 702. First, the district court must determine if the expert is qualified. "Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir. 1985). Once the district court is convinced that the expert is qualified, *Daubert* requires district courts to analyze "(1) the scientific validity of the method [used by the expert]; (2) the extent to which the trier of fact will be assisted in understanding the evidence and determining the fact at issue; and (3) whether the evidence will have a prejudicial effect which is not outweighed by its probative value." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) (citing *Daubert*, 509 U.S. at 591–96, 113 S. Ct. at 2796–98). "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S. Ct. at 2795. However, "[m]ost of the safeguards provided for in *Daubert* are not as essential in a case . . . where a district judge sits as the trier of fact in place of a jury." *Id.* The trial in the instant case will be a bench trial.

MHP claims that any testimony given by Dr. Fitzpatrick is (or will be) unreliable because (1) he did not interview the eyewitness; (2) he does not independently remember performing the autopsy, and (3) his report is "vague" and "scientifically incomplete." Defs.' Mot. 8. Dr. Fitzpatrick admitted that he does not remember performing Daley's autopsy and that he based his deposition testimony

solely on the autopsy report, which is less than two pages long. Dr. Fitzpatrick testified that Daley could have been conscious at the time of the accident, but admitted that he did not know to a "medical certainty whether [Daley] was alive or not." Defs.' Mot. Ex. A at 26.

Dr. Fitzpatrick has been the Assistant Director of Pathology at Terrebonne General Medical Center since 1982, and about 20% of his practice is dedicated to performing autopsies. Dr. Fitzpatrick has performed over 1,000 autopsies, and the Court cannot fault him for not specifically remembering the details of Daley's autopsy. It is acceptable under the Federal Rules of Evidence to use one's notes to refresh one's recollection. *See* Fed. R. Evid. 612. Thus, though Dr. Fitzpatrick does not independently recall performing the autopsy, the Court finds him to be a qualified expert and is not concerned about his reliance on the autopsy report.

Next, MHP complains that Dr. Fitzpatrick did not interview the eyewitness before issuing his autopsy report. MHP presents the Court with a textbook entitled *Forensic Pathology* that indicates *forensic* autopsies should include witness interviews. Dr. Fitzpatrick was not designated as an expert until thirteen months after he wrote the Daley autopsy report. So, at the time, he likely did not consider the autopsy he was performing to be a forensic autopsy. Therefore, the omission of eyewitness interviews before preparation of the autopsy report does not render the report scientifically invalid.

MHP's main concern is that, according to its expert, the autopsy report is vague and does not offer sufficient evidence to support Dr. Fitzpatrick's testimony that Daley was probably conscious at the time of the accident. Dr. Fitzpatrick explained that, even though the autopsy report makes no conclusions regarding consciousness, it does indicate that Daley's right chest was crushed, which caused his ribs to fracture his lungs, leading to a hemorrhage. The only head injury noted in the report

is a small laceration to the eyelid.[2] Thus, Dr. Fitzpatrick testified that the report's lack of reference to trauma to the head or neck indicates that Daley was probably conscious: "Well, if his head had been crushed or something, you could probably say he wasn't aware of things. But I see no evidence that he wasn't aware of things." Fitzpatrick Dep. 9.

Given the information available to the Court at this point and the fact that the trial will be conducted as a bench trial, the Court finds no reason to exclude Dr. Fitzpatrick's testimony. MHP offers testimony from an expert that disputes Dr. Fitzpatrick's conclusions, and the most appropriate course at this point is to listen to both experts and weigh their credibility during the bench trial.

MHP alternatively requests that Dr. Fitzpatrick's testimony should be limited to the contents of his autopsy report because his testimony beyond the report is scientifically invalid. Again, MHP is free to offer their expert's testimony regarding the validity of Dr. Fitzpatrick's conclusions. The Court finds the limitation requested by MHP unnecessary.

## II. Conclusion

For the reasons stated above, MHP's Amended Opposed Motion to Exclude the Expert Testimony of Dr. Fitzpatrick and MHP's alternative request to limit Dr. Fitzpatrick's testimony are **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

---

[2] MHP's expert expresses concern that the report does not provide a specific measurement of Daley's head laceration and instead describes it as "small." The Court would be concerned about the ambiguity of the term "small laceration" if a person who had not prepared the report were trying to draw conclusions from it. However, the Court is confident that "small laceration" means the same thing to Dr. Fitzpatrick today as it did when he performed the autopsy.

**IT IS SO ORDERED**.

**DONE** this 5th day of June, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge